# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

BRYAN HOLBERN,                                :

                Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant.          :

Case No. 3:08-cv-410

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits

prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on December 5, 2003, alleging disability from November 26, 2003, due to atrial arrhythmia. *See* Tr. 58-61; 67. Plaintiff's application was denied initially and on reconsideration. *See* Tr. 38-48. A hearing was held before Administrative Law Judge Melvin A. Padilla, (Tr. 370-95), who determined that Plaintiff is not disabled. (Tr. 16-29). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has

severe history of cardiac arrhythmia since February, 2005, left and right shoulder arthritis and tendinitis, since April, 2006, mild arterial insufficiency in the legs, history of alcohol and drug abuse, anxiety disorder, and personality disorder. (Tr. 20, ¶ 2). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a reduced limited range of medium work. (Tr. 22, ¶ 4). Judge Padilla found further that Plaintiff has no past relevant work. (Tr. 27, ¶ 5). Judge Padilla then used section 203.14 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 27-28, ¶9). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 28, ¶10).

Plaintiff was hospitalized in November, 2003, for coagulation therapy following complaints of shortness of breath and chest pain. (Tr. 127-59). Plaintiff underwent a myocardial perfusion study which showed an enlarged left ventricle with an ejection fraction of 47%. *Id.*

The record contains Plaintiff's treatment notes from the Miami Valley Hospital outpatient clinic from November, 2003, through April, 2005. (Tr. 225-53). Those records reveal that in February, 2004, Plaintiff underwent a cardioversion test which resulted in a regular pulse rate. (Tr. 240, 247). In March, 2004, Plaintiff complained of leg pain and reported that he was unable to walk from the parking garage to the hospital primarily because of leg pain which was relieved by resting for a few minutes. *Id.* In September, 2004, Plaintiff's health care providers encouraged him to decrease his alcohol consumption. *Id.* In March, 2005, Plaintiff's health care provider reported that Plaintiff had bilateral loss of hair in the distal half of his legs and a subsequent arterial Doppler flow study revealed that, at rest, Plaintiff had only mild arterial insufficiency of the lower extremities and an exercise stress test revealed a moderately severe claudication. *Id.*

4

Examining psychologist Dr. Martin noted in February, 2004, that Plaintiff obtained a GED in 1977, took college courses while in prison, had a history of multiple convictions for robbery, domestic violence, public intoxication, and driving under the influence, reported drinking to the point of blackouts, and stated that he stopped drinking alcohol in recent months before the present evaluation. (Tr. 166-69). Dr. Martin also noted that Plaintiff reported a history of illicit drug use including intravenous heroin and cocaine. *Id.* Dr. Martin reported that Plaintiff showed no motor impairment and a normal gait, was not cooperative but resentful, irritable, and suspicious about the examination, denied any history of suicidal ideation, reported homicidal ideation in the past but no threats or gestures, made "vague" allegations of olfactory and gustatory hallucinations but no visual or auditory hallucinations, and that Plaintiff exhibited no overt evidence of psychosis. *Id.* Dr. Martin estimated that Plaintiff was functioning in the average range of intelligence, was alert and oriented, noted that he claimed to have problems focusing his attention/concentration on tasks although he failed to display any such difficulties during the evaluation, determined that Plaintiff's judgment was remarkably self-centered, impulsive, and short sighted, and that he failed to display self-understanding about his emotions, cognitions, or patterns of behavior. *Id.* Dr. Martin identified Plaintiff's diagnoses as alcohol dependence, unspecified substance abuses, and antisocial personality disorder, he assigned Plaintiff a GAF of 65. *Id.* Dr. Martin opined that Plaintiff's mental abilities, including his ability to understand, remember and follow instructions, his ability to maintain concentration, persistence, and pace to perform simple, repetitive tasks, and his ability to withstand stresses and pressures of daily work activity, were not impaired. *Id.*

On November 11, 2004, Plaintiff sought emergency room treatment for complaints of chest pain, lightheadedness, dizziness, shortness of breath which had been going on for over two

years, and leg cramping. (Tr. 187-97). Plaintiff was treated and released with the diagnoses of chest pain, shortness of breath, and dizziness. *Id.*

A December 13, 2004, stress test was inconclusive because Plaintiff refused to exercise stating he felt tired. (Tr. 201). On January 14, 2005, Plaintiff underwent an Adenosine cardiolite test which revealed some subtle and diffuse ST changes which were non-diagnostic for ischemia. (Tr. 199). Plaintiff reported shortness of breath during the test. *Id.*

The transcript contains a copy of Plaintiff's treatment notes from the Miami Valley Hospital outpatient department dated November 26, 2003, through April 4, 2005. (Tr. 225-53). Those notes reveal that Plaintiff was treated at that facility for various medical conditions and complaints including peripheral arterial disease, atrial fibrillation and flutter, high blood pressure, left shoulder pain, bradycardia, leg pain likely due to claudication, and an eye infection. *Id.*

The transcript contains a copy of Plaintiff treatment records from the East Dayton Health Center dated February 18, 2005, through April 12, 2005. (Tr. 254-57). Those records indicate that Plaintiff was treated for leg cramping and left shoulder pain. *Id.* A February 25, 2005, MRI of Plaintiff's shoulder revealed acromioclavicular joint arthropathy and edema in addition to inferior spurring, contributing to chronic rotator cuff impingement, supraspinatus tendinosis, and a partial thickness tear of the articular surface of the distal supraspinatus tendon. (Tr. 209-10). Plaintiff was scheduled for surgery on the rotator cuff in May, 2005, but surgery was not performed due to Plaintiff's Coumadin levels. (Tr. 293, 295).

The transcript contains a copy of Plaintiff's mental health treatment records from Advanced Therapeutic Services dated February 10, through May 8, 2005. (Tr. 272-79). At the time Plaintiff was initially evaluated, it was noted that Plaintiff's affect was labile, that he cursed

6

frequently during the evaluation, and that he became tearful several times when his emotional state was questioned. *Id.* It was also noted that Plaintiff's mood was depressed, angry, indifferent, and fearful, that he endorsed some paranoid ideations, and that he was unaware of the presence of a mental disability. *Id.* Plaintiff's diagnoses were identified as anxiety disorder, rule out panic disorder with agoraphobia, and polysubstance disorder in remission. *Id.* Plaintiff consulted with psychiatrist Dr. Walters at Advanced Therapeutic Services who prescribed medication for Plaintiff. *Id.*

An April 8, 2005, arterial doppler flow study revealed mild resting arterial insufficiency of the lower extremities with ankle brachial indices decreasing into the moderately severe claudication range following exercise stress testing. (Tr. 280).

Plaintiff continued to receive general medical treatment at the East Dayton Health Center during the period April, 2005, through March, 2006. (Tr. 281-305; 332-56).

Dr. Walters and Plaintiff's counselor reported on October 24, 2005, that Plaintiff saw his counselor two to four times a month and his psychiatrist once every three months, that his diagnosis was anxiety disorder NOS, and that he displayed paranoia, had oddities of thought, perception, speech, and behavior, and that he had illogical thinking or loosening of associations. (Tr. 306-08). Dr. Walters and the counselor also reported that Plaintiff's prognosis was poor, that his impairment would cause him to be absent from work more than three times a month, and that he had slight restrictions of activities of daily living, marked difficulties in maintaining social functioning, and moderate deficiencies of concentration. *Id.*

An MRI of Plaintiff's right shoulder performed on April 20, 2006, revealed prominent degenerative changes in the acromioclavicular joint likely contributing to chronic rotator

cuff impingement and tendinosis of the proximal supraspinatus tendon with a suggestion of a small partial thickness tear. (Tr. 357-58).

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting treating psychiatrist Dr. Walters' opinion and by failing to find that his allegations of disabling pain were entirely credible. (Doc. 8).

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* at 406, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, *quoting,* 20 C.F.R. § 404.1527(d)(2).

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley, supra, quoting, Wilson, supra.* On the other hand, a Social Security Ruling[1] explains that

---

[1]Of course, although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

"[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Blakley, supra, citing, Wilson, supra.* and 20 C.F.R. § 404.1527(d)(2).

Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. *Blakley, supra*, *citing,* 20 C.F.R. §404.1527(d)(2). Those good reasons must be "suported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rul. 96-2p, 1996 WL 374188 at *5. The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

9

*Blakely,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Blakely, supra, quoting, Rogers v. Commissioner of Social Security,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In giving Dr. Walters' opinion only limited weight, Judge Padilla noted that Plaintiff had seen Dr. Walters on only a few occasions, that Dr. Walters' opinion is not supported by the clinical records, and is inconsistent with other evidence in the record. (Tr. 23-25).

As noted above, the record contains a copy of Plaintiff's treatment notes from Advanced Therapeutics. A review of those records reveals that during the period February 10, through May 8, 2005, Plaintiff saw his mental health care providers on only three occasions including the occasion of his initial evaluation. Although Dr. Walters and Plaintiff's counselor reported in October, 2005, that Plaintiff saw his counselor two to four times a month and Dr. Walters once every three months, other than the above-referenced records, there are no clinical records in the transcript which reflect that treatment. Indeed, although Plaintiff testified at the May, 2006, hearing that he continued to receive mental health treatment, on August 2, 2005, Plaintiff reported to his health care provider at East Dayton Health Center that he had stopped seeing his psychiatrist. *See,* Tr. 288. The mental health treatment records which are in the transcript indicate that Plaintiff did not exhibit any abnormal findings and no mental health expert has opined that Plaintiff is disabled due to any alleged mental impairment.

In addition to not being supported by the clinical notes, Dr. Walters' opinion as to Plaintiff limitations is inconsistent with other evidence of record. For example, Dr. Martin reported that while Plaintiff was resentful, irritable, and suspicious, he exhibited no evidence of psychosis, functioned in the average range of intelligence, was alert and oriented, and failed to display problems with concentration during the evaluation. Dr. Martin concluded that Plaintiff's abilities to perform work-related mental activities were not impaired and he assigned Plaintiff a GAF of 65, indicating, at worst, "some" difficulties in functioning. Finally, Dr. Walters' opinion is inconsistent with the reviewing psychologists' opinions. (Tr. 170-86).

Plaintiff essentially suggests that the Commissioner erred by failing to further develop the record in light of the fact that the record contains limited mental health treatment notes. However, the Court notes first that Plaintiff was represented by counsel at the hearing and, secondly, that neither Plaintiff nor counsel indicated that there were clinical notes missing from the record. In addition, Judge Padilla had before him Dr. Walters' clinical notes which revealed that Plaintiff displayed no abnormal findings as well as Dr. Martins' report and conclusions and the reviewing psychologists' opinions upon which he (Judge Padilla) was able to base his conclusion that Plaintiff is capable of performing substantial gainful activity.

Under these facts, the Commissioner did not err by giving Dr. Walters' opinion only limited weight or by failing to further develop the record.

Plaintiff argues next that the Commissioner erred by failing to find that his allegations of a disabling leg impairment and pain were not entirely credible.

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of*

11

*Social Security,* 486 F.3d 234, 247, (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991), *citing, Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986). Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones,* 945 F.2d at 1366-70.

In determining that Plaintiff is capable of performing a limited range of medium work in spite of his alleged physical impairments and associated pain, Judge Padilla noted that no medical source of record had opined that Plaintiff was disabled due to his physical condition, and that Plaintiff had received little, if any, treatment for his alleged impairments other than taking pain medication. (Tr. 21-23). Judge Padilla also noted that Plaintiff did not stop working due to any alleged impairments or pain therefrom. *Id*. The record supports Judge Padilla's conclusions.

First, the Court notes that in support of his argument that he is disabled as a result of his alleged leg impairment and the resulting pain, Plaintiff relies on the results of only one objective medical test, an arterial doppler flow study performed in April, 2005. However, as noted above, that

test revealed that Plaintiff had, at worst, only mild arterial insufficiency of the lower extremities at rest. (Tr. 280). To the extent that the doppler flow study indicated that exercise stress testing suggested a moderately severe claudication, Judge Padilla accommodated Plaintiff's claudication by limiting him to work that allows him to avoid climbing and which involves, *inter alia,* the option to alternate positions as needed.

As noted above, the record contains Plaintiff's treatment notes from the Miami Valley Hospital outpatient clinic and the East Dayton Health Center. A review of those records reveals that Plaintiff's treatment at those facilities primarily consisted of monitoring the effectiveness of his Coumadin therapy and pain medication. The records do not reflect any other conservative treatment measures such as physical therapy or injections. Judge Padilla accommodated Plaintiff's alleged shoulder impairment by limiting him to work that involves, *inter alia,* only occasional reaching.

Further, the record reveals that Plaintiff has not tried to work on a regular, full-time basis since about 1990 or 1991, because he "abandoned that effort". (Tr. 374-75). In addition, although Plaintiff now claims he is unable to work and has been since November, 2003, due to his allegedly disabling impairments, Plaintiff reported in November, 2004, that he stopped working because he "moved to Ohio" (Tr. 67-72). Finally, Judge Padilla's finding as to Plaintiff's residual functional capacity for a limited range of medium work in spite of his alleged impairments and complaints of pain are supported by the opinions of the reviewing physicians. (Tr. 160-65).

Under these facts, the Commissioner did not err in his evaluation of Plaintiff's subjective complaints or by finding that Plaintiff is capable of performing a limited range of medium work.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the

13

decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

December 1, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).